**Dated: June 21, 2019**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Imerys Talc America, Inc., et al., | ) | In the United States Bankruptcy Court |
| | ) | for the District of Delaware |
| Debtors. | ) | Case No. 19-10289-LSS |
| | ) | Ch. 11 |
| | ) | |
| Barbara Eggers, and spouse, | ) | |
| Vernon Eggers, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 19-01039-JDL |
| | ) | |
| Johnson & Johnson and | ) | |
| Johnson & Johnson Consumer, Inc., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AutoZone, Inc., et al., | ) | |
| | ) | |
| State Court Defendants. | ) | |

**ORDER REMANDING CASE**

## I. Introduction

This adversary proceeding is one of more than 2400 personal injury and wrongful death lawsuits filed against Johnson & Johnson ("J & J") in state courts across the country alleging injury (and death) from mesothelioma or ovarian cancer caused by exposure to asbestos from the talc used in J & J talcum powder products. J & J began removing many of these actions to federal court on the basis that they are related to the pending bankruptcy proceeding in Delaware of its primary talc supplier, Imerys Talc America, Inc. ("Imerys").[1] As of this date, more than 300 of the state court cases removed by J & J to the federal courts have been remanded back to the state court. About a dozen other cases have remained in the federal courts awaiting the outcome of the Delaware District Court ruling on whether venue of all the removed cases should be in that court.

On August 30, 2018, Plaintiffs' Barbara Eggers and her husband filed their negligence and strict products liability action in the District Court of Oklahoma County against J & J and numerous other entities. Mrs. Eggers filed her lawsuit approximately one month after she was diagnosed with malignant mesothelioma, a fatal and debilitating cancer caused by exposure to asbestos. She alleged that her inhalation or ingestion of asbestos fibers through her and her husband's use of J & J talc products, as well as her exposure to her father's and husband's contamination with asbestos in their jobs caused her illness. Mrs. Eggers passed away during the course of the state court litigation on March 19, 2019.[2]

---

[1] Several Imerys entities are in bankruptcy. For simplicity sake, the Court will refer to them all as "Imerys".

[2] Mr. Eggers suffers from dementia. Due to the death of Mrs. Eggers and Mr. Eggers' medical condition, Plaintiffs counsel has indicated that they anticipate having a personal representative appointed and substituted as the Party-Plaintiff.

2

On February 13, 2019, Imerys filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the District of Delaware. Any claims against Imerys were stayed by the bankruptcy filing pursuant to 11 U.S.C. § 362(a); however, the claims against J & J and other state court defendants were not stayed. On April 18, 2019, J & J filed a *Motion to Fix Venue for Claims* (the "Venue Motion") in the United States District Court for the District of Delaware ("Delaware District Court") to fix venue in the District of Delaware for all of the nation-wide state court talc actions against it. Within days of J & J filing its motion in Delaware to fix venue for claims related to Imerys, it began removing these actions, including the ones before this Court, on the basis that they are "related to" Imerys' bankruptcy proceeding. J & J asserts that Plaintiffs' claims against it are related to Imerys because J & J's supply agreements with Imerys contain contractual indemnifications and other liability-sharing provisions, including insurance policies, triggered by the Plaintiffs' claims. Plaintiffs seek to have their claims remanded back to the District Court of Oklahoma County for trial.

Before the court for consideration are J & J's *Notice of Removal* filed April 18, 2019 (the "Notice of Removal") [Doc. 1]; *Plaintiffs' Amended Emergency Motion to Remand and for Sanctions* filed May 8, 2019 (the "Motion to Remand") [Doc. 4]; *Defendants' Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Response and Opposition to Plaintiffs' Amended Motion to Remand* filed May 28, 2019 (the "Response") [Doc. 9]; *State Court Defendant Colgate-Palmolive Company's Special Entry of Appearance and Limited Response to Plaintiffs' Amended Emergency Motion to Remand* filed May 17, 2019 ("Colgate-Palmolive's Response") [Doc.7]; *Plaintiffs' Reply in Support of Emergency Motion*

*to Remand and for Sanctions* filed May 31, 2019 (the "Reply") [Doc.18]; and *Plaintiffs' Supplemental Brief in Support of Emergency Motion to Remand and for Sanctions* filed June 5, 2019 ("Plaintiff's Supplemental") [Doc. 25]. A hearing on the matter was conducted on June 4, 2019, whereupon the Court took the matter under advisement. Having considered the pleadings, the arguments of counsel and the relevant legal authorities, the Court finds it lacks subject matter jurisdiction and therefore grants the Plaintiffs' Motion to Remand as more fully discussed below.

## II. Discussion

### A. Burden of Proof.

It is well established that Federal Courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986). A "strong presumption" against removal jurisdiction exists. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). Because it is presumed that a cause lies outside this limited jurisdiction, the burden of establishing the contrary rests upon the party asserting jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83, 56 S.Ct. 780, 782 (1936). Thus, although the Plaintiffs' Motion to Remand is before the Court, J & J, as defendant in the present case seeking removal, bears the burden of proving subject matter jurisdiction in this Court. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

### B. J & J's Request for this Court to Defer Ruling.

As an initial matter, both in oral argument and in its Response, J & J urged this

4

Court to defer ruling on the Plaintiffs' Motion to Remand until after the Delaware District Court rules on J & J's pending Venue Motion brought pursuant to 28 U.S.C. § 157(b)(5). That statute provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending, or the district court in the district which the claim arose....".  This section, however, is not a jurisdictional statute but only relates to the proper federal trial venue for personal injury and wrongful death tort claims.  *Stern v. Marshall*, 564 U.S. 462, 479-80, 131 S.Ct. 2594 (2011) (holding that 28 U.S.C. § 157(b)(5) is not jurisdictional).  This removal is brought under 28 U.S.C. § 1452(a) which requires this Court to first make the threshold determination as to whether this Court has jurisdiction before exercising any prerogatives, including deferring the matter to the Delaware court.

**C.  Removal Jurisdiction.**

J & J has removed Plaintiffs' claim to this Court pursuant to 28 U.S.C. § 1452(a) which provides, in pertinent part, that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district *where such civil action is pending, if such district court has jurisdiction of such claim* or cause of action under section 1334 of this title." (Emphasis added).  The federal courts' subject matter jurisdiction regarding bankruptcy matters is governed by 28 U.S.C. § 1334(a), which provides that "the district courts shall have original and exclusive jurisdiction of all cases *under* title 11", and 28 U.S.C. § 1334(b) which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in or related to* cases under title 11." (Emphasis added).  The district courts may, in turn, refer "any or

all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

Inasmuch as the Plaintiffs' claims are neither created or governed by provisions of the Bankruptcy Code, the parties agree, as does this Court, that the claims do not "arise in" or "arise under" the bankruptcy case. Accordingly, the Court's subject matter jurisdiction to adjudicate the claims depends on whether the Plaintiffs' claims against J & J are "related to" the underlying bankruptcy case.

The Tenth Circuit in *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990), adopted the definition of "related to" jurisdiction set by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) as follows:

> Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could *alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate*. (Emphasis added).

Under this test, a bankruptcy court has jurisdiction to adjudicate claims between third parties where the outcome of the litigation could have a conceivable effect on the bankruptcy estate. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("A proceeding is 'related to' a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the 'outcome of that proceeding could conceivably have an effect on the estate being

6

administered in bankruptcy.' ") (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990)); see also *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493 (1995); *In re Otero County Hospital Association, Inc.*, 527 B.R. 719 (Bankr. D. N.M. 2015).

*Pacor,* although given great deference in almost all the Circuits, is not binding precedent in any but the Third Circuit. The Tenth Circuit is free to follow it or not, or make any modifications it deems appropriate. Most cases in the Tenth Circuit have recognized that *Gardner* did narrow *Pacor.* See e.g. *In re Eneco, Inc.*, 431 B.R. 308, 2010 WL 744351 (10th Cir. BAP 2010); *In re Mordini*, 491 B.R. 567, 571 (Bankr. D. Colo. 2013) (*Gardner* "*put a further limitation on the Pacor* test stating that 'the bankruptcy court lacks related jurisdiction to resolve controversies between third parties which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy'."); *In re Professional Home Health Care, Inc*., 2002 WL 1465914 (Bankr. D. Colo. 2002) (following *Gardner* in circumscribing the breadth of the "could conceivably have any effect" language of *Pacor*). Where, as here, the claims are being brought neither by nor against the debtor, "[a] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e. the debtor's estate] or the allocation of property among creditors'." *Matter of FedPak Systems, Inc*., 80 F.3d 207, 213-14 (7th Cir. 1996).

J & J asserts that "related to" jurisdiction exists because of certain contractual indemnification agreements and shared insurance policies that may be triggered by the Plaintiff's lawsuits. One problem with this argument is that while J & J makes general statements that the indemnification agreements and shared policies are applicable it has

7

not produced any admissible evidence pointing to specific language in the indemnification agreements or the insurance policies that make them applicable to the Plaintiffs' claims against Imerys.  To the contrary, the Plaintiffs have pointed out language in at least one indemnification agreement that appears to exclude product liability tort claims such as the Plaintiffs'.

As of this time, J & J has not filed a proof of claim in the Imerys bankruptcy nor did it assert any indemnification claims against Imerys in the state court litigation.[3] See *In re ALT Hotel, LLC*, 479 B.R. 781, 807 (Bankr. N.D. Ill. 2012).  More importantly, it appears from oral argument and the pleadings that subsequent litigation between J & J and Imerys is going to be necessary to adjudicate the party's rights under the indemnification agreements or insurance policies. "[A]n indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction." *Steel Workers Pension Trust v. CitiGroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003) (emphasis added).  "Even with an indemnification agreement, a court lacks 'related to' jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification." *In re W. R. Grace & Co.*, 412 B.R. 657, 667 (D. Del. 2009). "When indemnification is not automatic, there is no 'related to' jurisdiction." *Id.* Only cases where indemnification arises "independent of any additional legal actions" confer "related to" jurisdiction. *Id*.  Claims that serve as mere precursors to *potential*

---

[3] In discovery in another case which J & J sought to remove it stated that its indemnification and insurance agreements were "unlikely to be implicated" by or were "not relevant" to the plaintiff's claims against it.  See, e.g.,*Myers v. Avon Products, Inc. et al.,* Case No. 2:19-cv-03563 (C.D. Cal. 2019) (cited in *In re: Removed State Court Talc Actions v. Johnson & Johnson,* et al, 2019 WL 2191808 (C.D. Cal. May 21, 2019) (slip op.).

indemnification claims do not confer "related to" jurisdiction. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir. 1984) (emphasis added).

In *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3rd Cir. 2002), cert. denied, 537 U.S. 1148, 123 S.Ct. 884 (2003), a case heavily relied upon by Plaintiffs, the Third Circuit further defined the terms "conceivable effect on the bankruptcy estate" in establishing "related to" jurisdiction in an indemnification context. In explaining its earlier holding in *Pacor*, in language applicable to the present case the Court stated the following:

> They (the defendants) argue that the outcome of the Friction Product Claims could conceivably have an effect on the Debtor's estate, because it is 'conceivable' that if the Friction Product Plaintiffs succeed in their claims against them, the Friction Product Defendants would seek indemnification and/or contribution from Federal-Mogul.
>
> Their reading of the word 'conceivable' ignores the precise holding of *Pacor* where, despite the seemingly broad language of the opinion, we found no 'related to' jurisdiction for the Higgins lawsuit against Pacor because the outcome of that lawsuit could not result 'in even a contingent claim' against the debtor (Manville); rather, 'an entirely separate proceeding to receive indemnification' would have been required. 743 F2d at 995. The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.

300 F.3d at 381-382.

Without precise evidence as to the applicability of indemnification or insurance and probable necessity of litigation to establish the same, at this time the determination of any insurance or indemnification claims by and between J & J and Imerys is too speculative and attenuated for this Court to find "related to" jurisdiction exists.

**D. Equitable Remand**

Although this Court has already determined that it lacks subject matter jurisdiction, it wishes to emphasize that even if it had subject matter jurisdiction it would nevertheless remand the case on equitable grounds. Title 28 U.S.C. § 1452(b) provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on *any equitable ground*." (Emphasis added). The standards used to determine whether equitable remand is warranted under 28 U.S.C. § 1452(b) are virtually identical to those used to determine whether discretionary abstention is merited under 28 U.S.C. § 1334(c)(1) and include the following:

1. the effect of remand on the efficient administration of the estate;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficult or unsettled nature of the applicable law;

4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6. the degree of relatedness of the proceeding to the bankruptcy case;

7. the substance rather than the form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters;

9. the burden on the bankruptcy court's docket;

10. the likelihood that the proceeding involves forum shopping;

11. the existence of a right to jury trial; and

12. the presence of non-debtor parties.

*In re Oakwood Acceptance Corporation v. Tsingini,* 308 B.R. 81, 87-88 (Bankr. D. N.M. 2004) (citing *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 383-84 (Bankr. E.D. Ark. 2003)); *Ni Fuel Co, Inc v. Jackson*, 257 B.R. 600, 613 (N.D. Okla. 2000).

Not all the factors need to weigh in favor of the abstention in order to be appropriate, nor is any single factor of more importance than the others. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19, 96 S.Ct. 1236 (1976); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131,152 (Bankr. S.D. N.Y. 2010). "Because Section 1452(b) affords 'an unusually broad grant of authority,' any one of the relevant factors may provide a sufficient basis for equitable remand." *Stichting Pensioenfonds ABP, v. Countrywide Finance Corp.*, 447 B.R. 302, 311 (Bankr. C.D. Cal. 2010).

This Court agrees with the analysis of the factors militating in favor of remand set forth in recent J & J talc cases, *Holman v. Johnson & Johnson*, 2019 WL 2214826 (Bankr. N.D. Ill., May 22, 2019) and *Weirick v. Brenntag North America, Inc.,* 2019 WL 1976436 (C.D. Cal., May 3, 2019). First, at the present time there is no evidence before the Court indicating that the potential indemnification and/or insurance claims (which J & J has apparently not even made a claim for in the bankruptcy) would even affect the bankruptcy estate. As the Court stated at oral argument, it is significant that Imerys has not argued removal would be advantageous for its reorganizational purposes and did not join in any of J & J's motions filed in the District of Delaware. Indeed, in denying J & J's ex parte *Emergency Motion for Provisional Transfer Under 28 U.S.C. § 157(b)(5)* Judge Noreika found that "J & J cannot establish an emergency in the context of Debtors' bankruptcy or

one that has to do with the successful reorganization of the Debtors." [Case 19-MC-00103-MN, Doc. 34, pg. 7]. Second, there is no question that this negligence/products liability action is one in which state law issues predominate over bankruptcy issues. Third, there is no jurisdictional basis other than 28 U.S.C. § 1334, and this Court has held that no "related to" jurisdiction exists. Neither the Plaintiffs nor J & J has asserted that the claims are core or would be core if jurisdiction existed. Fourth, there are numerous non-debtor party defendants other than J & J who would be affected by removal. Fifth, remand of this case is unlikely to prejudice J & J as more than 300 other cases against it have already been remanded. On the other hand, the individual Plaintiffs face the possibility of trial in a remote forum in Delaware.

### III. Conclusion

For the reasons stated above, *Plaintiffs Amended Motion for Remand and for Sanctions* [Doc. 4] is **Granted**. This action is hereby **Remanded** to the District Court of Oklahoma County, Oklahoma[4].

# # #

---

[4] While Plaintiffs' Motion in its title also sought the imposition of sanctions, sanctions were not asserted or prayed for in the body of the Motion, and no evidence was presented at the hearing on the Motion regarding the same. The Court finds no basis for an award of sanctions.